UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
JHON VINAS and ANDRES VINAS
on behalf of themselves and all others
similarly situated,

                                   Plaintiffs,

                    - against -

MLJ PAINTING CORP. and
JOSEPH PICATAGGI,
individually,

                                   Defendants.
---------------------------------------------------------------------X

**19-cv-02921 (AMD) (RML)**

**SECOND AMENDED COMPLAINT**

**FLSA COLLECTIVE**

**CLASS ACTION**

      Plaintiffs Jhon Vinas ("J. Vinas") and Andres Vinas ("A. Vinas") (collectively "Plaintiffs"), by and through their attorneys, The Law Offices of Jacob Aronauer, on behalf of themselves and all others similarly situated, allege as follows:

## NATURE OF THE ACTION

1.    Plaintiffs bring this action on behalf of themselves and a putative class of painters who provided labor for MLJ Painting Corp. ("MLJ") and Joseph Picataggi ("Picataggi") (collectively "Defendants") on public works projects and other construction projects. Plaintiffs seek to recover New York State mandated prevailing wages and supplemental benefits as well as unpaid overtime and wage notice damages under the New York Wage Theft Prevention Act.

2.    Plaintiffs bring this action on behalf of themselves and all similarly situated current and former non-exempt workers who elect to opt-in to this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.,* and specifically, the collective action

provision of 29 U.S.C. § 216(b), to remedy violations of unpaid overtime provisions of the FLSA by Defendants.

3.  Plaintiffs, construction workers in the greater New York City area, who paint building interiors, are former employees of MLJ, a company that employs workers to paint residential buildings and public works projects.

4.  MLJ is a subcontractor on larger projects, some of which are public and some of which are private.

5.  MLJ has been engaged as a prime contractor and/or subcontractor for numerous public works projects in New York City.

6.  The locations of at least some of the public projects where Plaintiffs worked were 34-42 35th St., Long Island City, NY, and 250 Bradhurst Ave., New York, NY.

7.  On information and belief, the location at 250 Bradhurst Ave., New York, NY is a publicly funded Boys and Girls Club.

8.  Plaintiffs bring this action on behalf of themselves and a class of similarly situated former and current employees of the Corporate Defendants, pursuant to Fed. R. Civ. P. 23, for unpaid wages, pursuant to NYLL, Article 6, §§ 190 et seq.; NYLL, Article 19, §§ 650 et seq.; and its supporting regulations, 12 N.Y.C.R.R. 142-2-2.

9.  Plaintiffs bring this action on behalf of themselves and a class of similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ. Rule 23 as third-party beneficiaries, for Defendants' breach of contract.

10. Defendants failed to comply with the statutorily required provision of all public works project contracts entered into in the State of New York to abide by NYLL § 220, requiring

2

the payment of prevailing wages and supplemental benefits as set by the New York City Comptroller.

## JURISDICTION & VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, 29 U.S.C. §§ 216(b), (c), and 217; and 28 U.S.C. § 1337.  It has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. 1367(a).

12. Venue is proper in this district under 28 U.S.C. § 1391(b)(c), because all or a substantial part of the events or omissions giving rise to the claims occurred in this district.

13. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 201 and 2202.

## PARTIES

**Plaintiffs and Putative Class Members**

14. Plaintiffs and other members of the putative class are construction workers in New York City.

15. Jhon Vinas resides in Queens County, New York.

16. Andre Vinas resides in Queens County, New York.

17. At various times throughout the relevant period, Plaintiffs, as well as other members of the putative class, were jointly employed by Defendants and were employees within the meaning of the NYLL, Article 6, § 190(2).

**MLJ**

18. MLJ is a construction business incorporated in the State of New York, with its DOS Process address listed as 10 Shenandoah Blvd., Port Jefferson Sta., New York 11776 on the NYS Department of State Division of Corporations database.

19. On information and belief, MLJ provided and continues to provide painting services as both a subcontractor on numerous public works projects in New York City throughout the relevant period.

20. Upon information and belief, Joseph Picataggi is the President and Chief Executive Officer of MLJ.

**Joseph Picataggi**

21. Upon information and belief, Joseph Picataggi maintains control, oversight and the direction of MLJ.

22. Defendant Picataggi is a person engaged in business in Kings County, Queens County, New York County and Suffolk County, who is sued individually in his capacity as an owner, officer and/or agent of MLJ.

23. Defendant Picataggi exercises sufficient control over MLJ to be considered Plaintiffs' employer under the NYLL, and at all times material hereto said defendant had the authority to hire and fire Plaintiffs and established and maintained policies regarding the pay practices at MLJ.

24. Defendant Picataggi employed Plaintiff at all times relevant.

25. Defendant Picataggi had substantial control over Plaintiffs' working conditions and practices alleged herein.

**The Rule 23 Class**

26. Plaintiffs and members of the Rule 23 Class and the FLSA Collective Action were employed by Defendants.

27. Plaintiffs bring their NYLL claims and breach of contract claim on their own behalf and on behalf of a class of persons pursuant to Fed. R. Civ. P. 23, on behalf of all individuals who performed painting work for Defendants and who failed to receive the prevailing wage and supplemental benefits rate, as set by the New York City Prevailing Wage Schedule, for any and all hours worked on publicly financed construction projects at any time during the six years prior to the filing of this case or between filing and the entry of judgment in this case (the "Class").

28. The persons in the class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is presently unknown to Plaintiffs and calculation of such numbers would require facts in the sole control of Defendants, upon information and belief, there are more than 75 members of the class during the class period.

29. The claims of Plaintiffs are typical of the claims of the Class.

30. Plaintiffs will fairly and adequately protect the interest of the Class.

31. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where the individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in court against corporate defendants. The members of the Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures. Although the relative damages suffered by individual class members are not *de minimus*, such damages are small compared to the expense and burden of

individual prosecution of this litigation.   In addition, class action litigation and certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' practices.

32. Defendants have acted on grounds generally applicable to the Class, thereby making declaratory relief appropriate for the class.

33. There are questions of law and fact common to the class which predominate any questions solely affecting individual members of the class, including:

    a.  Whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class;

    b.  What proof of hours worked is sufficient where employers fail in their duty to maintain true and accurate time records;

    c.  Whether MLJ entered into certain contracts with various government agencies to provide painting services for public works projects;

    d.  Whether Defendant MLJ entered into contracts with various government agencies to provide painting services for public works projects;

    e.  Whether MLJ entered into contracts with various prime contractors as a subcontractor; and

    f.  Whether Defendants failed to ensure that Plaintiffs and the putative class were paid the prevailing wage and required supplements for all work performed on publicly financed construction projects, per contract terms statutorily required to be included in all public works contracts.

**CLASSWIDE FACTUAL ALLEGATIONS**

34. Plaintiffs and members of the Class ("Class Members") were employed by and worked for MLJ.

35. Upon information and belief, throughout all relevant periods, MLJ offered services in New York and New Jersey and its annual revenues exceeded $500,000.

36. As part of its regular business practice, MLJ willfully and repeatedly engaged in a pattern, practice, and/or policy of violating the NYLL.  This pattern or practice includes, but is not limited to:

    a.  Willfully failing to pay Plaintiffs and Class Members the required prevailing wages, supplemental benefits and overtime premiums;

    b.  Willfully failing to record all of the hours that its employees worked;

    c.  Willfully failing to retain true and accurate records of the wages paid to employees.

37. On information and belief, MLJ entered into contracts with government agencies, including the New York City Department of Housing Preservation and Development, to provide painting services and employed Plaintiffs and Class Members to perform the required work.

38. Plaintiffs and Class Members, as part of their employment for MLJ worked on various public work projects throughout the five boroughs of New York City.

39. In performance of Defendants' contracts and subcontracts on public works projects, Plaintiffs and Class Members performed painting services, including painting the interiors and exteriors of buildings.

40. Plaintiffs and Class members, as part of their employment for MLJ, used tools, paint and other materials that have been moved in or produced for interstate commerce.

41. All of the work that Plaintiffs and Class Members performed was assigned by Defendants.

42. NYLL, Article 8, § 220(3)(a) requires that all contracts and subcontracts entered into for the performance of public works in New York State include contract terms requiring that individuals who work pursuant to such contracts be paid the prevailing wage, supplements at rates to be determined by the New York City Comptroller, and overtime premiums.

43. This statutorily required promise to pay and ensure payment of the prevailing wages, supplements and overtime premiums in the public works contracts was made for the benefit of all workers furnishing labor on the sites of public works projects and, as such, Plaintiffs and Class Members furnishing such labor are the beneficiaries of that promise and the contracts entered into by Defendants and government agencies.

44. As required by law, a schedule containing the prevailing rates of wages and supplemental benefits to be paid to the Plaintiffs and Class Members should have been annexed to and formed part of the public works contracts.  If not annexed to the public works contracts, these schedules were expressly or impliedly incorporated into the contracts as a matter of law and/or public policy.

45. Upon information and belief, Plaintiffs and Class members should have been paid at the prevailing rare of wages (including supplemental benefits) of:

   a.  July 1, 2014 through June 30, 2015: $39.50 plus $26.12 in supplemental benefits per hour.[1]

---

[1] These rates are those of a "Painter – Brush & Roller" from the Office of the Comptroller, City of New York's § 220 Prevailing Wage Schedules.

b.  July 1, 2015 through June 30, 2016: $41.00 plus $26.37 in supplemental benefits per hour.

c.  July 1, 2016 through April 30, 2017: $42.50 plus $26.62 in supplemental benefits per hour.

d.  May 1, 2017 through June 30, 2017: $44.10 plus $27.02 in supplemental benefits per hour.

e.  July 1, 2017 through June 30, 2018: $42.50 plus $28.62 in supplemental benefits per hour.

f.  July 1, 2018 through June 30, 2019: $42.50 plus $30.87 in supplemental benefits per hour.

46. Upon information and belief, at no time were Plaintiffs and the Class Members paid the prevailing wage plus the supplemental benefit rate, for any hour worked, or overtime for hours worked in excess of forty (40) hours per week.

47. They were instead paid either an hourly, daily or weekly wage, depending on the employee, and these wages were always below the supplemental benefit rate.

48. Upon information and belief, Defendants paid the majority of Plaintiffs or Class Members at a daily rate between $100 and $170 per day, depending upon the individual.

49. Defendants willfully failed to pay Plaintiffs and Class Members engaged in labor on said public works projects the prevailing wages, supplements and overtime premiums as required by the above mentioned contract terms.

50. MLJ willfully failed to ensure that Plaintiffs and Class Members employed to fulfill said public works contracts were paid the prevailing wages, supplements and overtime premiums as required by the above-mentioned contract terms.

51. NYLL, Article 8, requires both contractors and subcontractors to keep certified payroll records of the hours worked and hourly wage rates paid to all laborers on publicly financed construction projects.

52. Defendants willfully failing to record all of the hours that its employees worked and to retain true and accurate records of the wages paid to employees;

53. Plaintiffs and the proposed class members did not sign in and sign out each day because Defendants did not provide any mechanism or procedure to do so.

54. Defendants always paid Plaintiffs and the Class Members in cash.

55. NYLL, Article 8, requires both contractors and subcontractors to keep certified payroll records of the hours worked and hourly wage rates paid to all laborers on publicly financed construction projects.

56. Upon information and belief, Defendants paid the majority of Plaintiffs or Class Members at a daily rate between $100 and $170 per day, depending upon the individual.

57. Upon information and belief, at no time were Plaintiffs and the Class Members paid the prevailing wage plus the supplemental benefit rate, for any hour worked.

58. They were instead paid either an hourly, daily or weekly wage, depending on the employee, and these wages were always below the supplemental benefit rate.

59. As part of its regular business practice, MLJ willfully and repeatedly engaged in a pattern, practice, and/or policy of violating the NYLL.  This pattern or practice includes, but is not limited to:

    d.  Willfully failing to record all of the hours that its employees worked;

    e.  Willfully failing to retain true and accurate records of the wages paid to employees;

     f.   Willfully failing to pay Plaintiffs and Class Members the required prevailing wages and supplemental benefits.

60. At all relevant times, MLJ failed to post and/or keep posted a notice explaining employees' rights under the NYLL.

61. NYLL, Article 8, § 220(3)(a) requires that all contracts and subcontracts entered into for the performance of public works in New York State include contract terms requiring that individuals who work pursuant to such contracts be paid the prevailing wage and supplements at rates to be determined by the New York City Comptroller.

62. This statutorily required promise to pay and ensure payment of the prevailing wages and supplements in the public works contracts was made for the benefit of all workers furnishing labor on the sites of public works projects and, as such, Plaintiffs and Class Members furnishing such labor are the beneficiaries of that promise and the contracts entered into by Defendants and government agencies.

63. On information and belief, MLJ entered into contracts with government agencies, including the New York City Department of Housing Preservation and Development, to provide painting services and employed Plaintiffs and Class Members to perform the required work.

64. In performance of Defendants' contracts and subcontracts on public works projects, Plaintiffs and Class Members performed painting services, including painting the interiors and exteriors of buildings.

65. Plaintiffs and the proposed class members did not sign in and sign out each day because Defendants did not provide any mechanism or procedure to do so.

66. Defendants willfully failed to pay Plaintiffs and Class Members engaged in labor on said public works projects the prevailing wages and supplements as required by the above mentioned contract terms.

67. MLJ willfully failed to ensure that Plaintiffs and Class Members employed to fulfill said public works contracts were paid the prevailing wages and supplements as required by the above-mentioned contract terms.

68. Furthermore, NYLL, Article 8, requires both contractors and all subcontractors performing work on a public works project to post the prevailing wage schedule and supplement rates.

69. Defendants did not post the prevailing wage schedule and supplement rates at any of the work sites of the public works projects for which Plaintiffs provided labor.

70. NYLL, Article 8, requires contractors on public works projects to provide subcontractors with the schedule of prevailing wages and supplements.

71. NYLL, Article 8, requires that subcontractors on public works projects provide contractors with a verified statement attesting that the schedule of wages and supplements has been reviewed and received, and agreeing to pay the applicable prevailing wages and supplements.

72. For the public works projects for which Plaintiffs furnished labor, MLJ and its owners did not provide MLJ with a verified statement attesting that the schedule of wages and supplements has been reviewed and received, and agreeing to pay the applicable prevailing wages and supplements.

73. All of the work that Plaintiffs and Class Members performed was assigned by Defendants.

74. Plaintiffs and Class Members were paid only in cash.

75. As part of its regular business practice, MLJ willfully and repeatedly engaged in a pattern, practice, and/or policy of violating the NYLL.  This pattern or practice includes, but is not limited to:

    a.  Willfully failing to record all of the hours that its employees worked;

    b.  Willfully failing to retain true and accurate records of the wages paid to employees;

    c.  Willfully failing to pay Plaintiffs and Class Members the required prevailing wages and supplemental benefits.

76. At all relevant times, MLJ failed to post and/or keep posted a notice explaining employees' rights under the NYLL.

77. Plaintiffs and Class Members, as part of their employment for MLJ regularly worked on public works projects throughout New York City financed by various city agencies.

78. NYLL, Article 8, requires that all contracts and subcontracts entered into for the performance of public works in New York State include contract terms requiring that individuals who work pursuant to such contracts be paid the prevailing wage and supplements at rates to be determined by the New York City Comptroller.

79. NYLL, Article 8, requires both contractors and all subcontractors performing work on a public works project to post the prevailing wage schedule and supplement rates.

80. NYLL, Article 8, requires contractors on public works projects to provide subcontractors with the schedule of prevailing wages and supplements.

81. NYLL, Article 8, requires that subcontractors on public works projects provide contractors with a verified statement attesting that the schedule of wages and supplements

has been reviewed and received, and agreeing to pay the applicable prevailing wages and supplements.

82. NYLL, Article 8, requires both contractors and subcontractors to keep certified payroll records of the hours worked and hourly wage rates paid to all laborers on publicly financed construction projects.

83. Plaintiffs and Class Members were not paid the prevailing wage or supplemental benefits rate as required by said contract terms.

84. The statutorily required promise to pay and ensure payment of the prevailing wage, supplements, and overtime in the public works contracts was made for the benefit of all workers furnishing labor on the sites of public works projects and, as such, Plaintiffs and Class Members furnishing such labor are the beneficiaries of that promise and the contracts entered into by Defendants and government agencies.

85. Upon information and belief, MLJ entered into contracts with government agencies, including the New York City Department of Housing Preservation and Development, to provide painting services and employed Plaintiffs and Class Members to perform the required work.

86. Upon information and belief, MLJ entered into numerous contracts for public works with governmental agencies, including the New York City Department of Housing Preservation and Development to provide, *inter alia*, painting services.

87. MLJ willfully failed to ensure that Plaintiffs and Class Members employed to fulfill said public works contracts were paid the prevailing wage, supplements, and overtime, as required by the above-mentioned contract terms.

88. In performance of MLJ's contracts and subcontracts on public works projects, Plaintiffs and Class Members performed painting services, including painting the interiors and exteriors of buildings.

89. Upon information and belief, MLJ paid the majority of Plaintiffs or Class Members at a daily rate between $100 and $170 a day.

90. Upon information and belief, at no time were Plaintiffs or Class Members paid the prevailing wage plus the supplemental benefit rate for any hour worked.

91. Defendants' unlawful conduct as herein described has been widespread, repeated, and consistent.

## INDIVIDUAL FACTUAL ALLEGATIONS

### Jhon Vinas

92. J. Vinas worked as a painter for Defendants from June 2015 to June 2017, and again from April 2018 to February 2019.

93. J. Vinas worked on various public work projects on behalf of Defendants.

94. When J. Vinas worked overtime, he was not paid time and one half.

95. J. Vinas was always paid in cash by Defendants.

96. The decision to pay J. Vinas in cash was by Defendant Picataggi.

97. In addition, when J. Vinas worked on public work projects, he was not paid the applicable prevailing wage rate or supplemental benefits rate.

98. Instead, J. Vinas was paid a flat daily salary in cash.

99. This decision was made by Defendant Picataggi.

100. Depending upon the time that J. Vinas worked for Defendants, J. Vinas was paid between $100 and $170 a day.

101.     From around June 2015 through April 2016 J. Vinas did not receive the prevailing wage plus supplemental benefits for work done for Defendants on public works projects. Instead J. Vinas was paid approximately sixteen dollars ($16.00) per hour.

102.     This decision, not to pay J. Vinas the prevailing wage, was made by Defendant Picataggi.

103.     From around May 2016 through June 2016, J. Vinas worked approximately ten (10) to twelve (12) hours per day, six (6) days per week, for a total of approximately sixty to seventy-two (60-72) hours per week, on public works projects for Defendants, and was not paid the prevailing wage plus supplemental benefits or overtime premiums, but was instead paid approximately sixteen dollars ($16.00) per hour for each hour worked.

104.     This work schedule was made by Defendant J. Picataggi.

105.     From around June 2016 through April 2017, J. Vinas did not receive the prevailing wage plus supplemental benefits for work done for Defendants on public works projects. Instead J. Vinas was paid approximately nineteen dollars ($19.00) per hour.

106.     From around May 2017 through June 2017, J. Vinas worked approximately ten (10) to twelve (12) hours per day, six (6) days per week, for a total of approximately sixty to seventy-two (60-72) hours per week, on public works projects for Defendants, and was not paid the prevailing wage plus supplemental benefits or overtime premiums, but was instead paid approximately nineteen dollars ($19.00) per hour for each hour worked.

107.     From around April 2018 through June 2018, J. Vinas did not receive the prevailing wage plus supplemental benefits for work done for Defendants on public works projects. Instead J. Vinas was paid approximately twenty-two dollars ($22.00) per hour.

108.    From around July 2018 through August 2018, J. Vinas worked a minimum of fifty-five (55) hours per week on public works projects for Defendants and was not paid the prevailing wage plus supplemental benefits or overtime premiums.

109.    From around September 2018 through November 2018, J. Vinas worked approximately thirteen to fourteen (13-14) hours per day, six (6) days per week, for a total of approximately seventy-eight to eighty-four (78-84) hours per week on public works projects for Defendants, and was not paid the prevailing wage plus supplemental benefits or overtime premiums, but was instead paid approximately twenty-two dollars ($22.00) per hour for each hour worked.

110.    From around January 2019 through February 2019, J. Vinas did not receive the prevailing wage plus supplemental benefits for work done for Defendants on public work projects.  Instead, J. Vinas was paid approximately twenty-two dollars ($22.00) per hour.

**Andres Vinas**

111.    A. Vinas worked as a painter for Defendants Medina from November 2015 through November 2018.

112.    A. Vinas worked on various public work projects on behalf of Defendants.

113.    When A. Vinas worked overtime, he was not paid time and one half.

114.    A. Vinas was always paid in cash by Defendants.

115.    The decision to pay A. Vinas in cash was made by Defendant Picataggi.

116.    In addition, when A. Vinas worked on public work projects, he was not paid the applicable prevailing wage rate or supplemental benefits rate.

117.    Instead, A. Vinas was paid a flat daily salary in cash.

118.    Depending upon the time that A. Vinas worked for Defendants, A. Vinas was paid between $100 to $170 a day.

119.    From around November 2015 through December 2015, A. Vinas did not receive the prevailing wage plus supplemental benefits for work done for Defendants on public work projects.  Instead, A. Vinas was paid approximately sixteen dollars ($16.00) per hour.

120.    The decision not to pay A. Vinas the applicable prevailing wage rate was made by Defendant Picataggi.

121.    From around January 2016 through February 2016, A. Vinas worked a minimum of forty-nine (49) hours per week on public works projects for Defendants and was not paid the prevailing wage plus supplemental benefits or overtime premiums.

122.    From around June 2016 through August 2016, A. Vinas worked approximately ten to thirteen (10-13) hours per day, five (5) days per week, for a total of approximately fifty to sixty-five (50-65) hours per week on public works projects for Defendants, and was not paid the prevailing wage plus supplemental benefits or overtime premiums, but was instead paid approximately one hundred and twenty dollars ($120.00) per day.

123.    From around September 2018 through November 2018 A. Vinas regularly worked approximately twelve (12) hours per day, seven (7) days per week, for a total of approximately eighty-four (84) hours per week on public works projects for Defendants, and was not paid the prevailing wage plus supplemental benefits or overtime premiums, but was instead paid approximately one hundred and fifty-five dollars ($155.00) per day.

**Defendants' Violations of the Wage Theft Protection Act**

124.    The NYLL and Wage Theft Prevention Act require employers to provide all employees with a written notice of wage rates.

18

125.     Plaintiffs were never given a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and anything otherwise required by law.

126.     Plaintiffs were never given a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and anything otherwise required by law.

127.     Upon information and belief, Defendants never gave wage notices to nor were wage notices signed by any other employee of Defendants.

128.     The decision not to provide Plaintiff and the class with accurate statements of what they would earn and would they earned in the course of their employment was a conscious decision made by Defendant Picataggi.

### FIRST CAUSE OF ACTION
### Breach of Contract
### <u>(On Behalf of the Rule 23 Class)</u>

129.     Plaintiffs repeat and re-allege the allegations contained in all previous paragraphs herein.

130.     NYLL, Article 8, § 220(3)(a), (b) requires that all contracts to which the state, public benefit corporation, or a municipal corporation is a party "shall contain a provision

that each laborer, workman, or mechanic, employed by such contractor, subcontractor or other person about or upon such public work, shall be paid the [prevailing] wage[]" and supplements for each hour worked.

131.    The statutorily required incorporation of such terms into all public works contracts and subcontracts in the State of New York exists for the benefit of Plaintiffs and Class Members.

132.    Defendants breached their public works contracts and/or subcontracts by failing to pay Plaintiffs and Class Members the prevailing wage and supplemental benefits rate for all hours worked in performance of said contracts.

**SECOND CAUSE OF ACTION**
**(Pled in the Alternative)**
**Unjust Enrichment**
**<u>(On Behalf of the Rule 23 Class)</u>**

133.    Plaintiffs repeat and re-allege the allegations contained in all previous paragraphs herein.

134.    Plaintiffs and Class Members have performed a significant amount of work for which they have not been paid.

135.    Upon information and belief, when Defendants entered into the public works contracts and/or subcontracts, they agreed to pay the required prevailing wage, overtime, and supplemental benefit rates of pay to Plaintiffs and Class Members.

136.    Upon information and belief, Defendants billed the public owner, such as the New York City Department of Housing Preservation and Development, overtime and supplemental benefit rates which were not paid to Plaintiffs and Class Members.

137.    As a result of this failure to pay said wages, Defendants were unjustly enriched for work and services performed by Plaintiffs and Class Members.

### THIRD CAUSE OF ACTION
### New York Labor Law – Failure to Provide Annual Wage Notices
### (Brought on the Rule 23 Class)

138.    Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate by reference all allegations in all preceding paragraphs.

139.    Defendants willfully failed to supply Plaintiffs and the class with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiffs as their primary language, containing Plaintiffs' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular payday designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

140.    Through their knowing or intentional failure to provide Plaintiffs and the class with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Relations regulations.

141.    Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiffs and the class are entitled to statutory penalties of fifty dollars per work day that Defendants failed to provide Plaintiffs with wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided for by the NYLL, Article 6, § 198(1-b).

## FOURTH CAUSE OF ACTION
### New York Labor Law- Failure to Provide Wage Statements
### (Brought on behalf of the Rule 23 Class)

142.    Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate by reference all allegations in all preceding paragraphs.

143.    Defendants have willfully failed to supply Plaintiffs and the class with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

144.    Through their knowing or intentional failure to provide Plaintiffs and the class with the wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq*., and the supporting New York State Department of Labor Relations regulations.

145.    Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiffs and the Class are entitled to statutory penalties of two hundred fifty dollars for each work day that Defendants failed to provide Plaintiffs with accurate wage statements, or a total of five thousand dollars each, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

## FIFTH CAUSE OF ACTION
### Fair Labor Standards Act
### (Brought on behalf of the Rule 23 Class)

22

146.     Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate by reference all allegations in all preceding paragraphs.

147.     Defendants failed to pay Plaintiff the proper overtime wages to which she is entitled under the NYLL and the supporting New York State Department of Labor Regulations.

148.     Defendants failed to pay Plaintiff one and one-half times her regular hourly rate of pay for all work in excess of forty hours per workweek.

149.     Through their knowing or intentional failure to pay Plaintiff overtime wages for hours works worked in excess of forty hours per workweek, Defendants have willfully violated the NYLL, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

150.     Defendants' decision not to pay overtime was willful.  Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants her unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs and pre-judgment and post-judgment interest.

**SIXTH CAUSE OF ACTION**
**Fair Labor Standards Act**
**(On behalf of Plaintiffs and the FLSA Collective)**

151.     Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate by reference all allegations in all preceding paragraphs.

152.     Defendants engaged in a widespread pattern or practice of violating the FLSA, 29 U.S.C. §§ 201 *et seq.*

153.     Plaintiffs consent in writing to being parties to this action, pursuant to 29 U.S.C. § 216(b).  Plaintiffs' written consents are attached hereto and incorporated by reference.

154.     At all times relevant to this action, Plaintiffs and Class Members were employed by Defendants within the meaning of the FLSA, 29. U.S.C. §203.

155.     At various times throughout the relevant period, Plaintiffs and Class Members were jointly employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203.

156.     At all times relevant to this action, Plaintiffs and Class Members were engaged in commerce and MLJ was an enterprise engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

157.     Defendants willfully failed to pay Plaintiffs and Class Members overtime compensation at a rate of not less than one and one-half times their wage for each hour worked in excess of 40 in a workweek, in violation of the FLSA, 29 U.S.C. § 207(a)(1).

158.     Defendants failed to keep appropriate and accurate payroll and time records as required by federal law.

159.     Due to the FLSA violations committed by Defendants, Plaintiffs and Class Members have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, and other compensation pursuant to 29 U.S.C. § 216(b).

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, pray for the following relief:

a.  That, at the earliest possible time, Plaintiffs be permitted to give notice of this class action, or that the court issue such notice to all persons who are presently, or have at any time during the six years immediately preceding the filing of this suit, up through

and including the date of this court's issuance of court-supervised notice, been employed by Defendants MLJ and Joseph Picataggi, individually;

b.  Certification of this case a class action pursuant to Fed. R. Civ. P. 23;

c.  Unpaid wages, attorney's fees, costs and interest pursuant to 29 U.S.C. § 201 et seq. and NYLL, Article

d.  Designation of John Vinas as the representative of the Class, and counsel of record as class counsel;

e.  Unpaid wages, attorneys' fees, costs, and interest pursuant to 29 U.S.C. § 201 et seq. and NYLL, Article 6, § 198 (1-a);

f.  An additional and equal amount of unpaid wages as liquidated damages pursuant to NYLL, Article 6, § 198;

g.  Penalties of fifty dollars for each work day that Defendants failed to provide Plaintiffs and the Class with a wage notice, or a total of five thousand dollars, as provided for by NYLL, Article 6, § 198;

h.  Penalties of two hundred and fifty dollars for each work day that Defendants failed to provide Plaintiffs and the Class with accurate wage statements, or a total of five thousand dollars as provided for by NYLL, Article 6, § 198;

i.  The difference between the wages paid to Plaintiffs and Class Members for work on public works projects and the prevailing wage plus supplemental benefit rate at the time, as determined by the New York City Comptroller, and interest on said sum;

j.  Issuance of a declaratory judgment that the practices of Defendants complained of herein are unlawful under the NYLL.

Dated: July 5, 2019
         New York, New York

                                **THE LAW OFFICES OF JACOB ARONAUER**


                        By:     */s Jacob Aronauer*
                                Jacob Aronauer
                                225 Broadway, 3rd Floor
                                New York, NY 10007
                                (212) 323-6980

                                *Attorney for Plaintiffs*